COMMONWEALTH OF MASSACHUSETTS
DISTRICT COURT OF MASSACHUSETTS

**************************************
NINA SCOTT,
Plaintiff,

Civil Action
No.______________________

v.

ASSOCIATED CREDIT SERVICES, INC.,
Defendant.
**************************************

**COMPLAINT AND REQUEST FOR JURY TRIAL**

The plaintiff Nina Scott (the "Plaintiff" or "Ms. Scott"), hereby complains of the defendant Associated Credit Services, Inc. (collectively the "Defendant" or "ACS") as follows:

**PARTIES**

1. Plaintiff Nina Scott is an individual residing in North Grafton, Worcester County, Commonwealth of Massachusetts. At all time relevant hereto, the Plaintiff was a 33 year old woman in the final trimester of her pregnancy.
2. Defendant Associated Credit Services, Inc. ("ACS") is a Massachusetts Corporation, with a principal place of business at 115 Flanders Rd., Suite 140, PO Box 5171, Westborough, Worcester County, Commonwealth of Massachusetts 01581. ACS is a "debt collector" within the meaning of 15 U.S.C. §1692a(6).

**JURSIDICTION AND VENUE**

3. Plaintiff's federal law claims arise under the Fair Debt Collection Practices Act, 15 U.S.C. §*1692 et. seq.* and 52 U.S.C. §1983. This Court therefore has subject matter jurisdiction over said claims pursuant to 15 U.S.C. §1692k(d), 42 U.S.C. §1988, and 20 U.S.C. §1337. This court also has supplemental jurisdiction pursuant to 28 U.S.C. §1367 to hear and adjudicate any claims arising under state law.
4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

**PRELIMINARY STATEMENT**

5. The Fair Debt Collection Practices Ace ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. §1692 *et. seq.* The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.
6. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any consumer debtor, and any false, deceptive or misleading statements in connection with the collection of a debt. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15

U.S.C. §1692d. Second, a "debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of a debt." 15 U.S.C. §1692e. And, third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. §1692f. The FDCPA is designed to protect consumers from unscrupulous debt collectors, regardless of the existence of a valid debt.

7. In enacting the FDCPA, Congress found that "there is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers." 15 U.S.C. §1692b.

8. In enacting the FDCPA Congress intended to regulate the manner in which debt collectors engaged in the collection of consumer debts. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.§1692e.

**FACTS**

9. The Plaintiff, at all relevant times, was a woman in the late stages of pregnancy and then a new mother of her second child.

10. The Plaintiff accrued medical bills relating to her pregnancy and subsequent birth of her second child.

11. The medical bills came from UMASS, billed by UMASS Memorial Medical Group and by UMASS Medical Center.

12. The Plaintiff received services on December 12, 2010 at the UMASS Medical Center Emergency Room purportedly in the amount of $734.77 and she received bills relating thereto. True and accurate copies of the bills dated December 29, 2010 and September 7, 2011 are annexed hereto as Exhibits “A” and “B”.

13. The Plaintiff also received services on March 10, 2011 purportedly in the amount of $199.48, as shown by Exhibit “B”.

14. The total amount of medical bills for medical services provided to the Plaintiff was purportedly $1,282.75.

15. Ms. Scott had (and still has) two payment plans with UMASS. True and accurate copies of the payment plans are annexed hereto as Exhibit “C.”

16. One plan for was for $1,743.25, dated May 20, 2011 (an amount which has yet to be verified as accurate and/or actually due and owing) and calling for 23 monthly payments of $75.00 with a first payment on June 3,2011 and ending on or before May 3, 2013 (the "$75.00 Plan").

17. The Plaintiff timely paid her $75.00 each month per the terms of the $75.00 Plan. The $75.00 Plan did not require payments to be made on any particular day within any given month.
18. The second plan was for $798.86 (an amount which has yet to be verified as accurate and/or actually due and owing). The plan was originally dated May 20, 2011 calling for repayment of $398.96 in debt but was revised increasing the debt to $798.86. That revised plan was dated July 5, 2011 and called for 30 monthly payments of $25.00 with a first payment on July 15, 2011 and ending on or before June 15, 2013 (the "$25.00 Plan").
19. The Plaintiff made the required timely $25.00 monthly payments directly to UMASS.
20. Again, the $25.00 Plan did not require payments to be made by any particular day of the month.
21. On June 23, 2011, despite the Plaintiff's compliance with the $75.00 Plan and the $25.00 Plan, UMASS submitted $348.85 and $199.48 of alleged debt to ACS for collection.
22. On June 25, 2011 Ms. Scott was put on bed rest for the remainder of her pregnancy.
23. Beginning on June 27, 2011, ACS began calling Ms. Scott to dun her for debts that: (a) she was certain she was current on, and; (b) which ACS had no right to collect. True and accurate copies of telephone logs for the Plaintiff's phone are annexed hereto as Exhibit "D".
24. All of the calls made to the Plaintiff by ACS are reflected on the phone logs annexed to the complaint as Exhibit "D" except for three (3) telephone calls: one on August

30, August 31 and September 1, 2011 as those calls resulted in voicemails left by ACS representatives.

25. Voicemail messages left via the Verizon cellular network do not result in a telephone log entry.

26. The Plaintiff did, nevertheless, receive such voicemail messages on the three consecutive days set forth at paragraph 24 hereinabove.

27. ACS called the Plaintiff most frequently in July 2011, surrounding the time that Plaintiff delivered her child. In fact, ACS called the Plaintiff on July 7, 2011, and the

transcript of the call was as follows:

**July 7, 2011**

NS Hello.

AC Hello, is Nina there?

NC This is she.

AC Hi there, my name is Toni and I'm with Associated Credit, how are you today?

NC I'm all right.

AC Ok, real quick I have to let you know that this is a communication with a debt collector and any information obtained will be used for that purpose and the call may be monitored or recorded for quality assurance purposes. You have a balance for, let's see here, U. Mass. Medical Center. You have one for U. Mass Medical and two for U. Mass Group Practice for $1,283.10. How do you want to get these taken care of?

NS I'm already in a payment plan with them so I don't understand why you're calling me.

AC Because they sent you to collections in June.

NS I'm sorry?

AC They sent you to collections in June with a past due balance.

NS OK, well I have payment plan with them so I'd appreciate it if you'd stop calling me.

AC Have a good day Nina.

28. Plaintiff's call directly to UMASS on July 8th to try to get ACS to stop dunning her.

29. Plaintiff's due date was August 3, 2011.

30. After the call from ACS on July 7th, and Ms. Scott's call to UMASS on July 8th, Ms. Scott gave birth prematurely to her child on July 9, 2011.

31. The Plaintiff delivered her baby prematurely at 4:15a.m., on an emergency basis, at UMASS Medical center in Worcester, the very institution that improperly forwarded Plaintiff's alleged debts to ACS.

32. The call on July 7th caused Plaintiff a great deal of stress and anxiety which was not helpful to her medical condition and caused to feel a great deal of emotional distress in the two days leading up to the premature delivery of her child.

33. Certainly from the July 7th call and thereafter, ACS should have inquired with UMASS and then knew or should have known that Ms. Scott in fact had payment plans with UMASS, that she was current on those plans, and that ACS had no legitimate right and/or should not be dunning Ms. Scott for a debt that was current and that should not have been in the hands of this debt collector.

34. From July 8, 2011 onward ACS had no legitimate reason to contact the Plaintiff about these debts that were covered by payments plans that the Plaintiff was current on with the original creditor UMASS.

35. Nevertheless, ACS continued to call to harass the Plaintiff by repeatedly seeking to "verify" information that they already knew.

36. In response to ACS' troubling call of July 7, 2011, the Plaintiff called UMASS on July 8th and spoke to a financial counselor named "Laurie Ann" at some length about her particular situation. She explained that ACS was trying to collect for debt that was subject to the UMASS payment plans in which the Plaintiff was current. The UMASS representative assured the Plaintiff that she would contact ACS to let them know that the plan was current and in effect.

37. Again, the ACS calls did not stop.

38. In addition to the calls, on July 27, 2011 the Defendant sent Ms. Scott a dunning notice which was inaccurate and improper given that Ms. Scott had payment plans with the original creditor UMASS and she was current on those plans and since at least as early as July 7, 2011 ACS knew or should have known those facts to be true. A true and accurate copy of the July 27, 2011 dunning letter is annexed hereto as Exhibits "E" and reprinted here:



P.O. Box 5171
Westborough, MA 01581-5171
ADDRESS SERVICE REQUESTED

ASSOCIATED
CREDIT SERVICES, INC.
(800) 962-9898

July 21, 2011

ASSOCIATED CREDIT SERVICES, INC.
P.O. Box 5171
Westborough, MA 01581-5171

8308021-B3 589121308
PERSONAL & CONFIDENTIAL
NINA SCOTT 8308021
10 Bedford Dr
North Grafton MA 01536-1206

IF PAYING BY CREDIT CARD, FILL OUT BELOW

| CIRCLE CARD USING FOR PAYMENT | |
|---|---|
| CARD NUMBER | EXP. DATE |
| SIGNATURE | AMOUNT PAID $ |

Balance Due: $1283.10

***Detach Upper Portion and Return with Payment***

RE: UMASS MEDICAL CENTER
Balance Due: $1283.10

FORMAL DEMAND FOR PAYMENT

You apparently have chosen to ignore our demand for payment.

Our records show that this account is collectable.

Be advised, if we do not receive payment, we will assume you have no intention of meeting this obligation. Is this correct?

Think it over carefully and send payment now!

Do not force us to proceed with further collection efforts.

If paid in full to this office immediately, all collection activity will be stopped.

THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.

For your convenience, make your payment on-line at www.payacs.com

OUR TOLL FREE NUMBER IS (800) 962-9898

ASSOCIATED CREDIT SERVICES, INC. • 115 Flanders Road, Suite 140, P.O. Box 5171 • Westborough, MA 01581-5171
(800) 962-9898
*Office Hours: Mon. and Tues. 8 am to 9 pm EST • Weds. 12 pm to 9 pm EST • Thurs. and Fri. 8 am – 5 pm EST*
*Most Saturdays 8 am to 12 pm EST*

39. The calls continued after the baby was born in July and then (after a brief hiatus) again on August 26, 2011, when ACS received a formal cease and desist letter from Plaintiff's counsel.

40. By continuing to dun the Plaintiff, under these circumstances, the Plaintiff was:

    a. confused and dismayed by the communications of ACS;

    b. conflicted as to whom she was to pay;

    c. unsure of the character, extent and legal status and/or amount of the debt(s);

    d. embarrassed, ashamed and humiliated about her debt;

    e. made to feel anxious and fractured at a time in her life when the Plaintiff was supposed to be feeling nothing but joy about the birth of her child;

    g. frightened about new medical bills and that the calls relating to the existing bills would become more frequent; and

    h. unable to understand why ACS kept calling her.

41. The Defendant, by their actions, made the Plaintiff feel (among other things) irritable, nervous and fearful, caused to worry, to cry, to lose sleep, lash out against family members, feel anxious, exacerbate her medical condition with respect to her pregnancy, and cause her to feel physically ill from the frustration of not knowing how or when or if she would be able to resolve this situation given that ACS would not listen to her and act on her truthful statements that she had valid payment plans with UMASS and that she was current on those plans.

42. As a result of the Defendant's actions, the Plaintiff experienced a general and specific loss of happiness. With every phone call made to her while she was on pregnancy related bed rest, she was reminded that she owed money for a medical bill. The

Plaintiff was made to be fearful of how much more debt she was going to accumulate during the upcoming birth of her daughter and hospital stay.

43. The Plaintiff was made to feel nervous and fearful of future actions that the Defendant might take against her beyond the phone calls. The Plaintiff thought frequently about the claimed debt and how it was only going to get worse. After each phone call from ACS the Plaintiff could not concentrate on tasks she had to accomplish or things she needed to do or take care of.

**COUNT I – 15 U.S.C.§ 1692e(2)(A)**

44. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

45. In misrepresenting and/or mischaracterizing the character, amount or legal status of the balance on the subject account, the Defendants violated 15 U.S.C. §169e(2)(A).

**COUNT II – 15 U.S.C.§ 1692e(2)(B)**

46. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

47. In misrepresenting and/or mischaracterizing the character, amount or legal status of the balance on the subject account, the Defendants violated 15 U.S.C. §1692e(2)(B).

**COUNT III – 15 U.S.C.§ 1692e(10)**

48. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

49. The Defendants violated the provisions of 15 U.S.C.§ 1692e(10) by the use of false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

**COUNT IV – 15 U.S.C.§ 1692d(5)**

50. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

51. The acts complained of herein, including but not limited to ACS' calling her with the intent to annoy, abuse or harass the Plaintiff and by seemingly requiring her to verify and then re-verify information, but never acting on that information to confirm that the Plaintiff was current on her payments to the original creditor.

52. The acts complain of also include continuing to call the Plaintiff after the Defendant knew or should have known that the Plaintiff was current on her obligations to UMASS and that there was no legitimate reason for the Defendant to be calling the Plaintiff.

53. The acts complained of violate the provisions of 15 U.S.C. § 1692d(5).

**COUNT V– Negligent Infliction of Emotional Distress**

54. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

55. The acts of the Defendant herein constitute a negligent infliction of emotional distress upon the Plaintiff.

56. The emotional distress inflicted on the Plaintiff by the Defendant caused physical harm or injury to Ms. Scott as outlined above (and otherwise) manifested by

objective symptomatology which will be (upon information and belief) supported by expert medical testimony at trial.

57. The distress alleged was foreseeable.

**COUNT VI – Violations of Massachusetts Debt Collection Regulation**

58. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

59. The acts of the Defendant herein violate the provisions of 940 C.M.R. 7.00 et. seq., the Debt Collection Regulations of Massachusetts Attorney General.

60. As a result of the Defendant's violations of the relevant provisions of 940 C.M.R 7.00, the Plaintiff has suffered substantial damages and injury.

61. Count VI is actionable under M.G.L. c. 93A.

62. Demand for relief for violation of 940 C.M.R. 7.07(2) was made upon the Defendant in the 93A demand letter referenced in Count 7 below and attached here as Exhibit "F."

**COUNT VII – Violations of Massachusetts Unfair and Deceptive Trade Practices**

63. The Plaintiff repeats and realleges the allegations of paragraphs 1 through 43 herein as if set forth in full.

64. By letter dated October 19, 2011 the Plaintiff (through her counsel) sent the Defendant a 45-page demand letter under M.G.L. c. 93A. A true and accurate copy of the 93A demand letter is annexed hereto as Exhibits "F" and is expressly incorporated into this count by reference.

65. The Defendant failed and/or refused to make any offer of settlement as provided for under M.G.L. c. 93A §9.

66. As a result of the Defendant's unfair and deceptive trade practices, the Plaintiff has suffered substantial damages and injury.

**WHEREFORE**, the Plaintiff hereby request that this Court grant judgment in favor of the Plaintiff and against the Defendants Associated Credit Services, Inc. as follows:

a. Inquire into and award Plaintiff actual compensatory damages suffered pursuant to 15 U.S.C. §1692k(a)(1);

b. Inquire into and award Plaintiff actual damages suffered by the Plaintiff for her emotional distress;

c. Award Plaintiff statutory damages of $1,000.00 for violations of 15 U.S.C. §1692k(a)(2)(A);

d. Pursuant to M.G.L. c.93A, grant the plaintiff up to three times the amount of the actual damages suffered;

e. Award Plaintiff all costs of suit, including reasonable attorneys' fees; and

f. Grant such other and further relief as is just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY IN THIS CASE**

NINA SCOTT,
By her Counsel,
/s/Ricky Berger

_______________________________

Richard Kent Berger, Esq.
BBO#548913
eLegal, PC
Post Office Box 320553
Boston, MA 02132
855-353-4251
rberger@elegal.net

Dated: January 19, 2012